IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHARON A. CLARK                                                                                          PLAINTIFF

v.                                       No. 4:08CV00336 JLH

ARKANSAS HEALTH GROUP d/b/a
ANDERSON MEDICAL CLINIC, a Baptist Affiliate                                   DEFENDANT

**OPINION AND ORDER**

Sharon Clark commenced this action against Arkansas Health Group, doing business as Anderson Medical Clinic, alleging sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, age discrimination under the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and a violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* She has also alleged claims for retaliation and violation of public policy. Arkansas Health Group has moved for summary judgment, which Clark opposes. For reasons that will be explained, the motion for summary judgment is granted.

**I.**

In November 1994, Sharon Clark was hired to work at Anderson Medical Clinic as the front office receptionist. Her duties included greeting patients, setting up charts, scheduling appointments, and taking insurance information, among other things. Each year Clark was employed with the clinic, she was evaluated. In 2004, she received a score of 57 points, which was a low score. Clark agrees that this was a fair evaluation. She also says she is not aware of any other employees who received a 57 on an evaluation since she does not have access to other employees' files. Clark admits that in both her 2005 and 2006 evaluations she received a score of 63, which is on the low end of the range for "meets performance expectations." While the Arkansas Health Group asserts

that they had removed many of Clark's job duties by 2006, Clark disputes this, stating that she was still in the position of front office representative when she was terminated.

Arkansas Health Group says the incident that led to Clark's termination occurred in March 2007. Clark denies the incident was the reason for her termination. The policy at the clinic was that a treating physician had to review a patient's chart before the patient was allowed to review the chart. Clark admitted in her deposition that she knew this was the clinic's policy. On March 1, 2007, Janice Bryant came to the clinic and asked another employee, Lynn Horton, if she could review her chart. Bryant then motioned to Clark and Horton told Clark, "I've already told her no." Clark then asked Bryant to come over to her desk and allowed Bryant to see the chart, provided that she did not edit, add, or subtract anything from the chart. In her deposition, Clark agreed that she knew at the time she let Bryant see the chart that it was against clinic policy. Clark says that during the incident that occurred with Bryant she allowed Bryant to see her chart because she felt that other employees were ignoring Bryant, that they were not cooperating with Bryant, that Bryant was a registered nurse, and that she wanted to help Bryant because Bryant was in tears. Clark adds that there was a clinic policy that employees were not to intimidate patients from reviewing their own medical records. Horton sent an email to Dena Atkins, the clinic manager, explaining the incident. Atkins testified in her deposition that another employee, Robin Sample, also told Clark not to provide the chart without following proper procedures, but that Clark ignored the advice.

Clark called in sick the following day, March 2, and returned to work on March 5. On March 6, Clark learned that Bob Stephenson, a human resources director affiliated with Baptist, and Jill Reynolds, risk management director, were coming to the clinic to investigate an alleged HIPAA violation, which is how Clark's incident with Bryant was incorrectly described at the time by some. Clark was shocked by this news and went home that day during her regular lunch hour. She returned

from lunch with a letter requesting what she calls leave pursuant to the Family Medical Leave Act (FMLA) because of her bi-polar disorder. She stated in the letter that she had been hospitalized in 1997 and undergone treatment for the following three to four years with Dr. Gene Reid. She said in the letter that she needed to see him again soon. She also wrote in the letter that Horton would not have reported her sister-in-law, another employee, Leo Tate, for doing the same thing. Clark admitted that she requested the leave of absence before visiting with Stephenson and Reynolds because she overreacted to the news that they were coming to the clinic and she was concerned about losing her job. That afternoon, Clark met with Stephenson and Reynolds and provided them with her letter requesting leave. She also discussed with them the incident with Bryant in which she allowed Bryant to view her chart. At the end of the meeting, Stephenson told Clark to go home and not return to the clinic until she heard from him. Stephenson gathered statements from other clinic employees about the incident, which Clark says was his way of seeking out a pretext to fire her.

Charlene Williams, a human resources generalist with Baptist, sent Clark a letter dated March 8, 2007, informing Clark of her rights under the FMLA and requesting information from Clark's physician. Clark provided the requested information from Dr. Reid. According to Arkansas Health Group, Clark received FMLA leave. On March 12, Lynn Horton authored a statement about how Clark had treated her since the incident with Bryant. While Clark had previously always been pleasant, Horton said that Clark had become cold and unfriendly towards her and that she would have to consider finding another job if Clark returned. Leo Tate also said she would quit if Clark returned to work at the clinic. Arkansas Health Group says that Dr. Anderson no longer trusted Clark to oversee his medical records, but Clark disputes that. While Clark was on leave, she says that she saw a patient who told her that when she asked about Clark at the clinic, she was told that Clark was out sick. At the time, Clark sought to enforce her right to privacy as a patient of the clinic

under HIPAA and filed a complaint with the Arkansas Health Group. It is undisputed that saying that someone is "out sick" is not a violation of HIPAA.

During April, Clark provided Stephenson with a note from Dr. Reid stating that she could return to work on April 23, 2007 with no restrictions. Stephenson tried to schedule a meeting with Clark, but there was a problem and the meeting was delayed and ultimately did not happen. Instead, Stephenson contacted Clark by phone on April 27, 2007. He told her that while the Bryant incident was not a HIPAA violation, she knowingly violated the clinic's policy. At that time, Stephenson told Clark she had been terminated.

Clark points out that she was not allowed to return to work in any position at the clinic after she provided her doctor's clearance. Clark says that several younger clinic employees who utilized FMLA leave were later allowed to return to their positions after leave, including Lynn Horton, Leo Tate, Susan Riggs, Pam DePriest, and Amy Terhune. According to Clark, another "older" employee, Sandra Clements, who suffered a stroke, was terminated after requesting FMLA leave, and Clark says that Dena Atkins also testified that she did not trust Sandra Clements. Arkansas Health Group disputes this, stating that the person who had a stroke was Vicki Clement. According to Dena Atkins, all she knew was that Vicki did not return to work after the stroke, likely because of FMLA leave. There was another employee named Sandra Clement, and Atkins said she did not trust Sandra's job performance. Clark also says that younger employees had violated clinic policy and had not been punished, although Arkansas Health Group says that Clark is unable to provide specific examples and did not know whether those employees actually violated work policies or not.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**III.**

Clark has made claims alleging sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, age discrimination under the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* She has also alleged claims for retaliation and violation of public policy. Each claim will be addressed in the following paragraphs.

**A.      SEX DISCRIMINATION**

In her complaint, Clark alleged a sex discrimination claim under Title VII. Title VII prohibits discrimination based on sex, 42 U.S.C. § 2000e-2(a), and it establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id.* Therefore, a plaintiff must timely file a charge with the EEOC describing the specific alleged discrimination in order to pursue the allegation in court. *Id.* at 222-23. Clark concedes that the charge of discrimination she filed with the EEOC did not include an allegation of discrimination based on sex. Consequently, Clark has withdrawn her claim and the Arkansas Health Group is entitled to summary judgment on Clark's sex discrimination claim under Title VII.

**B.      AGE DISCRIMINATION**

Clark has also alleged that she was discriminated against based on her age in violation of the ADEA. To establish a prima facie case of age discrimination, a plaintiff must show: (1) she was at

least forty years old; (2) she was terminated; (3) she was meeting her employer's reasonable expectations at the time of her termination; and (4) she was replaced by someone substantially younger. *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008). If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the termination. *Id.* If the employer provides a sufficient reason, the burden shifts back to the plaintiff to show that the employer's reason was pretext and that the "true motivation was discriminatory animus." *Id.* at 642-43. In other words, a plaintiff "'can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual *and* (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.'" *Mayer v. Nextel West Corp.*, 318 F.3d 803, 807 (8th Cir. 2003) (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

     Arkansas Health Group argues that Clark cannot meet two of the elements of the prima facie case: that she was not meeting her employer's reasonable expectations at the time of her termination and that she was replaced by someone substantially younger. Arkansas Health Group points out that Clark's low scores on evaluations and her violation of clinic policy go to the fact that she was not meeting their expectations. While Clark's scores were low, they still fell within the range for "meets performance expectations" in 2005 and 2006. Arkansas Health Group also points out that Clark thought she was replaced by a twenty-seven year-old when in fact she was replaced by a forty-two year-old. Clark was fifty-eight at the time of her termination. Viewing the facts in a light favorable to Clark, the facts showing that her scores reflected she was meeting performance expectations and

that she was replaced by someone sixteen years her junior could be a prima facie showing of age discrimination.

Since Clark has a prima facie case for age discrimination, the burden shifts to Arkansas Health Group to provide a legitimate, nondiscriminatory reason for her termination. Arkansas Health Group says that Clark was terminated for violating the clinic's policy regarding patient access to medical charts and because of accusations Clark made about other employees' integrity. Because Arkansas Health Group has provided a legitimate, nondiscriminatory reason, the burden shifts back to Clark to show that this reason is pretext and that Clark's age was the motivating factor for Arkansas Health Group's decision. Clark says that the reason is pretext because she says Arkansas Health Group would not have terminated another employee for a similar violation of clinic policy and procedure. In Clark's opinion, Lynn Horton and Leo Tate, who were both younger than Clark, broke clinic policy everyday by leaving work early to pick their children up from school. Clark admitted in her deposition that she did not know whether either woman had permission to leave or not. She also said that Susan Eoff left everyday to check on her mother in a nursing home. Other than these examples, Clark did not know of any other employees who violated clinic policy and were not terminated. Clark's assertions do not show that there were other clinic employees who violated clinic policy and were not terminated. Clark has not made a showing that Arkansas Health Group's reason is pretext. Therefore, Arkansas Health Group is entitled to summary judgment on Clark's age discrimination claim.

**C.   FMLA CLAIM**

Clark alleges that the Arkansas Health Group violated the FMLA by not reinstating her to her former position or a comparable position following FMLA leave. An employee who takes leave

under the FMLA is entitled, upon return from leave, either to be restored to the position she held when leave began or to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). However, no employee taking FMLA leave is entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Therefore, "if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005). "As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights." *Id.* at 979.

Arkansas Health Group argues that it has offered a lawful explanation for Clark's termination: the fact that she broke company policy. Clark argues that since the investigation into the Bryant incident occurred during her FMLA leave, the incident itself and her violation of clinic policy were not the reasons for her termination. However, Clark herself requested FMLA leave the day Stephenson and Reynolds came to the clinic to investigate the Bryant incident. The fact that the investigation occurred after she left that day could not be avoided and does not in and of itself link the reason for her termination to her FMLA leave. When a plaintiff can offer "no evidence other than speculation to support a connection between her termination and FMLA leave" and "no reasonable jury could conclude" the plaintiff's termination was related to her FMLA leave, the employer is entitled to summary judgment. *Phillips v. Mathews*, 547 F.3d 905, 911-12 (8th Cir. 2008). Clark has offered no evidence that her termination and FMLA leave are linked other than her

own bare assertions; therefore, Arkansas Health Group is entitled to summary judgment on Clark's FMLA claim.

**D.    RETALIATION AND VIOLATION OF PUBLIC POLICY**

Clark claims that Arkansas Health Group retaliated against her because she was terminated after she complained of an alleged HIPAA violation related to a clinic employee telling a patient she was "out sick." An employee can prove retaliation using the McDonnell Douglas burden-shifting analysis. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). An employee must first make a prima facie showing that she exercised a protected right, she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action. *Id.* Then the burden shifts to the employer to show a legitimate, non-discriminatory reason for its actions. *Id.* Finally, the employee must show that the employer's reason is pretext and that the employer's retaliatory motive played a part in the termination. *Id.* Assuming that Clark has met her burden for a prima facie case, Arkansas Health Group has provided a reason for Clark's termination: that she violated clinic policy and the fact that she questioned her co-workers' integrity. The burden then shifts to Clark to show pretext and that her termination was motivated by Arkansas Health Group's desire for retaliation. Clark says that the timing between her filing of the HIPAA complaint and her termination establishes a causal link between the two events. She also says that the facts that her co-workers wanted her gone goes to Arkansas Health Group's discriminatory intent. While a temporal link between such events would be enough to establish a prima facie case, it is not enough alone to overcome summary judgment in light of the employer's justification. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). The sole fact that Clark was terminated one month after she filed a HIPAA complaint in light of the fact that Arkansas

Health Group explained she was terminated for breaking clinic policy does not create an inference that Arkansas Health Group retaliated against her for filing a HIPAA complaint.

Clark also claims that Arkansas Health Group violated public policy because she was discharged in retaliation for her attempt to enforce her medical privacy rights. She argues that it is the public policy of the state of Arkansas that a patient has an individual right to privacy in her medical records. *See* ARK. CODE ANN. §§ 16-46-401–405; ARK. CODE ANN. § 14-14-110. Arkansas Health Group points out that the statutes Clark relies on are not relevant to this case. The Patient Medical Records Privacy Act, ARK. CODE ANN. §§ 16-46-401–405, applies to the privacy of medical records between parties involved in civil litigation. Section 14-14-110(b) of the Arkansas Code protects an individual's right to privacy in medical records with respect to records in the possession of local governments. Even if these statutes reflect to a general public policy in Arkansas protecting an individual's right to privacy of her medical records, Clark has not shown that there is a genuine issue of material fact. No privacy right was violated when an employee of the clinic told a patient that Clark was "out sick." Moreover, the undisputed facts show that Clark was discharged because she violated a policy of her employer. No reasonable jury could find that she was discharged in retaliation for exercising her right to privacy.

## CONCLUSION

For the reasons listed above, Arkansas Health Group's motion for summary judgment is GRANTED. Document #11. Sharon Clark's complaint is dismissed with prejudice.

IT IS SO ORDERED this 19th day of March, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE